**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>              Plaintiff,<br><br>          v.<br><br>Transition Equity Partners, LLC, a Delaware limited liability company, Transition Equity Partners LLC, an Illinois limited liability company, and Patrick C. Eilers,<br><br>              Defendants. | Case No: 1:26-cv-05231 |

**COMPLAINT AND JURY DEMAND**

Plaintiff, DAVID GORDON OPPENHEIMER ("Oppenheimer" or "Plaintiff"), by and through his attorneys, ZLATKIN CANN ENTERTAINMENT, for his complaint ("Complaint") against Defendants TRANSITION EQUITY PARTNERS, LLC, a Delaware limited liability company ("TEPDE"), and TRANSITION EQUITY PARTNERS LLC, an Illinois limited liability company ("TEPIL"), and Patrick C. Eilers, an individual residing in Illinois ("Eilers" and, together with TEPDE and TEPIL, collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1. This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of a work registered with the United States Copyright Office, and under the Digital Millennium Copyright Act ("DMCA") for knowing removal, alteration, and/or omission of Plaintiff's copyright management information ("CMI") and distribution and/or importing for distribution of copies of Plaintiff's work with knowledge that CMI has been removed, altered, and/or omitted without authority of Plaintiff, all in violation of 17 U.S.C. § 1202.

## THE PARTIES

2.      Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3.      Upon information and belief, TEPDE was formed on October 16, 2019, as a Delaware limited liability company, with its principal offices and place of business located in Chicago, Illinois.

4.      Upon information and belief, TEPIL was formed on or about March 16, 2026, as an Illinois limited liability company with its principal place of business in Chicago, Illinois. Such formation occurred after Plaintiff asserted claims against TEPDE. Upon further information and belief, TEPIL is a mere continuation of, and successor to, TEPDE, as evidenced by the following nonexclusive set of characteristics: (a) continuity of ownership and management under Eilers; (b) continuation of the same business operations, services, and investment activities; (c) use of the same name, branding, and website, including specifically the TEP Website (as defined below); (d) use of the same corporate registered agent; and (e) continuity of location and business purpose. Upon information and belief, TEPIL was created, at least in part, to avoid or limit liability arising from TEPDE's infringing conduct. Accordingly, TEPIL is liable as a successor, alter ego, and/or under a de facto merger theory for the acts and liabilities of TEPDE.

5.      Upon information and belief, Eilers is an individual residing in Cook County, Illinois, and at all relevant times held an ownership interest in TEPDE and TEPIL and held primary decision-making authority within both TEPDE and TEPIL.

6.      Upon information and belief, at all relevant times, one or more of the Defendants owned and/or operated the website https://transitionequity.com (together with all subpages, "TEP Website").

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.  Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with this District generally and, in particular, with the events herein alleged, that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, TEPDE's and TEPIL's principal offices and place of business are located in this District, Eilers resides in this District, and, upon information and belief, Defendants' actions giving rise to Plaintiff's claims occurred within this District.

9.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

10.  Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

11.  Oppenheimer's photographs have appeared in publications including Rolling Stone, MSNBC, MTV, AOL, and FUSE and have been displayed at the Museum of the City of New York. The subjects of Plaintiff's photography include Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois, and New York, New York.

12.  Oppenheimer has, over the years, performed photography services through his own name as well as under the trade name "Performance Impressions." Performance Impressions LLC, which is owned and operated exclusively by Oppenheimer, is a North Carolina limited liability company in good standing.

13.     Oppenheimer earns his livelihood from the creation and licensing of his photographs, as well as from selling prints of his photographs.

14.     Upon information and belief, at all relevant times, one or more of the Defendants owned and operated the TEP Website and various other digital properties (together with the TEP Website, "Defendants' Digital Properties"), through which Defendants promoted their various services in the field of identifying and facilitating investment opportunities that support the transition to a low-carbon energy infrastructure.

**<u>Oppenheimer Creates, Registers, and Publishes the Photograph</u>**

15.     In 2013, Oppenheimer created an aerial photograph of Astoria Generating Station, a power plant located in Astoria-Queens, New York City ("Photograph") through significant skill and personal expense. Specifically, while working as an aerial photographer, Oppenheimer captured the Photograph during a commercial flight out of LaGuardia Airport using professional camera equipment. This required skill and experience to best capture the aerial perspective.

16.     The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs entitled *Photographs by David Oppenheimer from Winter of 2013* under copyright registration number VAu 1-130-886, with an effective date of registration of February 14, 2013. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit 1. The deposit copy of the Photograph on record with the United States Copyright Office is attached hereto as Exhibit 2.

17.     After submitting the Photograph for registration, Plaintiff published the Photograph through the Performance Impressions website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com, an image and video hosting service commonly used by photographers to display photographs.

18.     As is his pattern and practice, the published version of the Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Photograph was published alongside the notice "© 2013 David Oppenheimer" and "All Rights Reserved" and clicking the "Show settings" followed by "Show EXIF" links makes all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph (as published on the Performance Impressions website and on Flickr) is attached as Exhibit 3 hereto bearing Plaintiff's CMI on the face of the Photograph.

19.     Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

20.     Since the date of creation, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to publicly display pursuant to 17 U.S.C. § 106.

21.     Plaintiff's copyright in the Photograph is presently valid and subsisting and has been valid and subsisting since the moment of creation and all conditions precedent to the filing of this suit have been satisfied, including registration under 17 U.S.C. § 411(a).

## Defendants Use the Photograph Without Authorization

22.     Upon information and belief, in or around October 2021, one or more of the Defendants (or such Defendants' authorized representative(s)) obtained the published version of the Photograph, cropped the Photograph to remove Oppenheimer's CMI, and reproduced, distributed, and/or displayed at least three copies of the Photograph without Oppenheimer's CMI through at least the following URLs (collectively, "Infringing URLs"):

- https://transitionequity.com/portfolio/
- https://transitionequity.com/wp-content/uploads/Astoria-Power-USPowergen.jpg
- https://transitionequity.com/wp-content/uploads/Astoria-Power-USPowergen-533x300.jpg

23.     Upon information and belief, one or more of the Defendants or a third party at the direction of one or more of the Defendants proceeded to publish the Photograph at the Infringing URLs to promote and advertise the services offered through Defendants' Digital Properties. Screenshots of Defendants' infringing online publications are attached to this Complaint as Exhibit 4.

## Oppenheimer Provides Notice of Copyright Infringement to Defendants

24.     On or around August 29, 2024, Oppenheimer sent TEPDE a demand letter via email regarding TEPDE's infringement of Oppenheimer's rights in the Photograph, addressing such correspondence to the attention of Eilers, who was marketed on the TEP Website as being the organization's "Founder & Managing Partner."

25.     Not having received any response from Eilers or anyone representing TEPDE, Oppenheimer again followed up via email on March 4, 2025.

26.     Without a response to his prior attempts to contact Eilers, Oppenheimer sent another follow-up email on May 28, 2025. No one from TEPDE responded to Oppenheimer's communications.

27.     Oppenheimer proceeded to engage counsel, and on or around July 17, 2025, Oppenheimer's counsel sent a notice of retention of litigation counsel to, *inter alia*, TEPDE via FedEx at TEPDE's principal office and at the address of TEPDE's registered agent identified in the records of the Delaware Division of Corporations, as well as via email to Eilers and the company's contact email provided at the TEP Website.

28.     On or about August 13, 2025, TEPDE, through one of its representatives, responded to Oppenheimer's counsel via email, acknowledging receipt of the July 17, 2025 correspondence from Oppenheimer's counsel, as well as prior usage of the Photograph at the Defendants' Digital Properties.

29.     Oppenheimer's counsel sent follow-up correspondence via email to TEPDE's representative on December 11, 2025, setting forth an offer to settle on Oppenheimer's behalf supported by substantial case law and legal authority.

30.     Not having received any response to the prior letter, Oppenheimer's counsel followed up via email on January 6, 2026. The same day, TEPDE's representative responded via email that "Our team is working on an answer and will get back to you shortly, apologies for the delay!"

31.     No representative of TEPDE or anyone else representing "Transition Equity Partners" communicated further with Oppenheimer's counsel. Oppenheimer's counsel proceeded

to follow up via email on February 5, 2026, and March 12, 2026. No response was received from any representative(s) of TEPDE.

32.     According to the records of the Illinois Secretary of State, the effective date of TEPIL's formation was March 16, 2026, and Eilers is the sole manager of TEPIL.

33.     The TEP Website remains active and markets "Transition Equity Partners" as providing the same type of services as was marketed prior to the formation of TEPIL.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. § 501**
**(Against All Defendants)**

34.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–33 of this Complaint.

35.     Plaintiff owns the exclusive rights to the copyright-protected Photograph.

36.     Upon information and belief, TEPDE, by and through its agents and under the direction and/or control of Eilers, caused the copying, distribution, and/or display of the Photograph at each of the Infringing URLs.

37.     TEPDE and/or Eilers's acts are and were performed without the permission, license, or consent of Plaintiff.

38.     TEPDE and Eilers acted with willful disregard of the laws protecting Plaintiff's copyright.

39.     TEPDE and/or Eilers infringed Plaintiff's copyright in the Photograph in violation of 17 U.S.C. § 501.

40.     Though TEPIL did not exist at the time of the infringing uses of the Photograph on the TEP Website, TEPIL is nevertheless liable for infringement of Oppenheimer's copyright in the Photograph as TEPDE's successor and/or alter ego.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**                                          **PAGE 8**

41. Oppenheimer has been harmed by the infringement in multiple ways. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable. Defendants have benefited from their infringement of the Photograph. TEPDE's and/or Eilers's unauthorized use undermined the Photograph's exclusivity, diminished the Photograph's licensing value, and caused ongoing injury to Oppenheimer's business reputation and professional goodwill by removing attribution, thereby impairing Plaintiff's control over the manner and context in which his work is presented to the marketplace. Such loss of control and reputational harm is continuing in nature and not fully compensable through monetary damages alone. Accordingly, Oppenheimer is entitled to injunctive relief, damages, and other relief authorized under the Copyright Act.

42. Upon information and belief, Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from the Photograph.

43. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photograph in an amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

44. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**Vicarious Copyright Infringement**
**(In the Alternative Against Eilers)**

45. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–44 of this Complaint.

46.     At all relevant times, Eilers was the founder, owner, member, manager, and/or other type of principal of TEPDE.

47.     Upon information and belief, Eilers controlled nearly all decisions relating to TEPDE and was the dominant influence of TEPDE. Eilers provided hands-on decision making with respect to the activities of TEPDE, making most of the decisions relating to TEPDE. Eilers had the right and ability to supervise and/or control the infringing conduct of TEPDE, and/or to stop the infringements once they began. Upon information and belief, Eilers had an obvious and direct financial interest in these infringing activities of TEPDE, because TEPDE's use of the Photograph on the Infringing URLs and the TEP Website advertised and promoted the services of TEPDE, encouraging viewers of the TEP Website to purchase, use, or otherwise engage with the services offered by TEPDE and/or the services of affiliates and/or customers of TEPDE. Infringement of the Photograph allowed TEPDE to promote and sell more effectively TEPDE's and/or TEPDE's affiliates' and/or customers' services by drawing, capturing, holding, and prolonging the attention of the average viewer of the TEP Website, providing a direct positive impact on sales and/or the brand, public image, and reputation of TEPDE. Accordingly, Eilers is personally liable to Oppenheimer as a joint infringer or is otherwise vicariously liable for the actions of TEPDE.

## THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against Eilers)

48.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–44 of this Complaint.

49.     Alternatively, Eilers has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

50. Upon information and belief, as the Founder and Managing Partner of TEPDE, Eilers at all relevant times was the dominant influence in TEPDE. Eilers provided hands-on decision making with respect to the activities of TEPDE, set and controlled the policies and protocols of TEPDE, and established corporate rules and cultures which encouraged the infringing activities. Eilers therefore had actual knowledge of TEPDE's infringing activities or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same.

51. Accordingly, Eilers is personally liable to Oppenheimer as a contributory infringer for the infringing activities of TEPDE.

## FOURTH CLAIM FOR RELIEF
### Violations of the DMCA Under Section 1202(b)
### (Against All Defendants)

52. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–33 of this Complaint.

53. Plaintiff's published version of the Photograph contained CMI within the digital file of the Photograph, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notice stating "© 2013 David Oppenheimer" on the Photograph itself. Plaintiff also included CMI in adjacent legible captions where the Photograph was displayed containing a proper notice of copyright, his company's name, and the URL of the Performance Impressions website.

54. Upon information and belief, TEPDE, Eilers, and/or third parties acting at their direction violated the DMCA by knowingly and intentionally removing, altering, and/or omitting Plaintiff's CMI from the Photograph, including by removing or cropping out Plaintiff's visible copyright watermark, stripping and/or failing to preserve embedded metadata identifying Plaintiff as the author and copyright owner, and omitting accompanying CMI from captions displayed with

the Photograph. Defendants thereafter reproduced, distributed, and publicly displayed the Photograph without such CMI, including at the Infringing URLs, while knowing, or having reasonable grounds to know, that such removal, alteration, and/or omission would induce, enable, facilitate, and/or conceal infringement of the Photograph.

55. Such actions further demonstrate TEPDE's and/or Eilers's willful infringement of the Photograph.

56. The aforesaid actions, including without limitation the distribution and import for distribution of each copy of the Photograph at each of the Infringing URLs, constitute separate violations of 17 U.S.C. § 1202(b). More specifically, all instances of removal, alteration, and/or omission of the Photograph's CMI by TEPDE, Eilers, or at their behest resulted in a separate violation of Section 1202(b)(1), and each instance of distribution or import for distribution of the Photograph (or copies of the Photograph) without CMI resulted in a separate violation of Section 1202(b)(3).

57. Upon information and belief, TEPDE and/or Eilers knew or had reasonable grounds to know that their removal, alteration, and/or omission of Plaintiff's visible watermark with notice of copyright and accompanying CMI in the Photograph's metadata and caption, would induce, enable, facilitate, and/or conceal infringement of the Photograph. The CMI removed, altered, and/or omitted from the Photograph was plainly visible on the face of the published image, embedded within its metadata, and included in accompanying captions identifying Plaintiff as the author and copyright owner. The removal of this visible and embedded attribution demonstrates deliberate removal, alteration, and/or omission rather than accidental or inadvertent conduct and supports a reasonable inference that TEPDE and/or Eilers acted with knowledge that such removal would conceal infringement.

58. As a result of TEPDE and/or Eilers's actions with regard to the Plaintiff's CMI, Plaintiff has been and will continue to be harmed in an amount as yet to be determined.

59. As a result of TEPDE's and/or Eilers's actions with regard to the Plaintiff's CMI, Plaintiff is entitled to damages pursuant to 17 U.S.C. § 1203(b)(3) in the form of either actual damages in accordance with 17 U.S.C. § 1203(c)(2) or, upon Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), costs pursuant to 17 U.S.C. § 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

60. Though TEPIL did not exist at the time that TEPDE and/or Eilers engaged in conduct violating Oppenheimer's rights under the DMCA, TEPIL is nevertheless liable for every such DMCA violation as TEPDE's successor and/or alter ego.

61. Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C. § 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows:

a. Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, or making derivative works of the Photograph;

b.  That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photograph;

c.  Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from the Defendants' acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each work infringed as a result of Defendants' acts of copyright infringement, and, in the event that the factfinder determines that any of the Defendants' infringements was not willful, that Defendants be required to pay statutory damages up to $30,000 for each work infringed by the Defendants found to be not willful;

d.  Pursuant to 17 U.S.C. § 1203(c)(2), that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from any and all of the Defendants' violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

e.  Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)-(5), Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

f.  Such other and further relief as the Court shall find just and proper.

Dated: May 5, 2026

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorneys for Plaintiff David Gordon Oppenheimer*